UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINE CALACETO,<br><br>    Plaintiff,<br>v.<br><br>RICHARDSON BAY REGIONAL AGENCY, et al.,<br><br>    Defendants. | Case No.  23-cv-04487-TLT<br><br>**ORDER DISMISSING CASE UNDER FEDERAL RULES OF CIVIL PROCEDURE 41(B) AND 12(B)(6) WITH PREJUDICE**<br><br>Re: Dkt. Nos. 77, 81, 82, 85 |

Plaintiff Caroline Calaceto alleges that Defendants Richardson Bay Regional Agency ("RBRA"), James Malcolm, and Steven McGrath (together, "Defendants") seized and destroyed her boat, the Loveshack, absent legal authority.

Pending before the Court is Defendants' Federal Rule of Civil Procedure 12(b)(6) motion, ECF 77 to partially dismiss the First Amended Complaint ("FAC"), ECF 39, and Defendants' motion to dismiss the entire FAC under Federal Rule of Civil Procedure 41(b), ECF 85.

Defendants initially moved only to dismiss: (1) Count Six under California Civil Code § 52.1 ("Bane Act") (against all Defendants); (2) Count Seven (conversion) (against all Defendants); (3) Count Eight (negligence) (against all Defendants); and (4) a violation of California Code of Civil Procedure § 526a ("taxpayer action") against only the RBRA. ECF 77. Following Plaintiff abandoning her action, Defendants moved to dismiss the entire case on June 3, 2025. ECF 85.

Having considered Defendants' motions, the lack of opposition by Plaintiff, the relevant legal authority, and for the reasons below, the Court **GRANTS** Defendants' unopposed motion to dismiss counts six through eight in the FAC under Rule 12(b)(6), ECF 77, and **GRANTS** Defendants' unopposed motion to dismiss the entire action with prejudice under Rule 41(b), ECF

85.  The Court dismisses the remaining causes of action after Plaintiff failed to prosecute, ignored court orders, and abandoned her action.

## I. PROCEDURAL HISTORY

### A. Pro Se Designation

On August 30, 2023, Plaintiff filed a complaint against all Defendants, ECF 1, and a motion for leave to proceed *in forma pauperis*, ECF 2.  That same day, Judge Thomas S. Hixson provided notice of resources for pro se litigants.  ECF 3.  The resources explained how to access civil local rules, judges' standing orders, e-filing procedures, and warned that failing to oppose a motion could be deemed consent to its granting.  ECF 3, Ex. 1, 2–3.

On August 31, 2023, Judge Hixson granted Plaintiff's motion to proceed *in forma pauperis*.  ECF 4.  In that order, Judge Hixson again provided Plaintiff pro se resources, including contact details for the Legal Help Center and the website to download, *Representing Yourself in Federal Court: A Handbook for Pro Se Litigants*. *Id.*

### B. Consent to Magistrate Judge

On October 12, 2023, the clerk noticed all parties to file a consent or declination to proceed before a magistrate judge by October 26, 2023.  ECF 10.  On October 25, 2023, Defendants consented to a magistrate judge.  ECF 12.  Plaintiff failed to respond as instructed by the clerk. On October 27, 2023, the clerk sent Plaintiff a second notice to file consent or declination by November 9, 2023.  ECF 13.  Plaintiff again failed to respond.  On November 13, 2023, the clerk filed a third notice to Plaintiff for her to file a consent or declination by November 22, 2023. ECF 14.  After being instructed three times, Plaintiff responded and filed a declination on November 14, 2023.  ECF 15.

### C. Appointment and Withdrawal of Pro Bono Counsel

On February 19, 2024, Plaintiff filed a motion requesting appointment of counsel.  ECF 27. On February 23, 2024, the Court appointed Andrea M. Henson of the Federal Pro Bono Project.  ECF 30.

On May 13, 2024, Plaintiff timely filed the amended and operative complaint.  ECF 39. Plaintiff alleges all Defendants violated: (1) the right to substantive due process against state

2

1  created danger under the Fourteenth Amendment and 42 U.S.C. § 1983; (2) the right to due
2  process of law under the Fourteenth Amendment and 42 U.S.C. § 1983; (3) the Fourth
3  Amendment under 42 U.S.C. § 1983; (4) the Fifth Amendment under 42 U.S.C. § 1983; (5) the
4  right to due process under the California Constitution Article 1 § 7(a); (6) the Bane Act; (7)
5  conversion; and (8) negligence. *Id.* at 8–15. Plaintiff alleged the taxpayer action against only
6  RBRA, which Plaintiff erroneously titled the duplicative "seventh cause of action." *Id.*

7  On December 5, 2024, Plaintiff's counsel was absent from the joint case management
8  conference. ECF 57. Considering an upcoming mediation, the Court issued an Order to Show
9  Cause with a response date no later than January 20, 2025. ECF 58. Counsel filed a timely
10 response and shared that the failure to appear was due to the Berkeley tsunami warning December
11 5, 2025, and her need to provide immediate assistance to other unhoused clients. Counsel also
12 addressed all the Court's questions regarding the case management issues in her declaration. ECF
13 62.

14 On January 24, 2025, after counsel submitted an administrative motion alerting the court of
15 tension between counsel and the Plaintiff, the Court granted Plaintiff's counsel's unopposed
16 motion to withdraw due to a breakdown in the attorney-client relationship. ECF 68 at 3. The
17 Court furthered ordered Plaintiff to register on ECF and to seek free legal assistance from the
18 Legal Help Center. *Id.* The Court notes that Plaintiff is currently ECF registered with a physical
19 address, phone number, and email. Plaintiff was referred to all pro se resources and the case was
20 continued to assure the Court that the Plaintiff had copies her case documents. *Id.*

21 On January 30, 2025, Plaintiff was present, along with counsel, at the further case
22 management conference held via zoom webinar. The Plaintiff's case file was still outstanding and
23 would be delivered no later than February 3, 2025. Plaintiff indicated she was amenable to further
24 mediation. ECF 69. The Court again referred Plaintiff to the Legal Help Desk, indicated that the
25 case would be referred to a Magistrate Judge and that the ADR deadline would be extended. *Id.*
26 On February 3, 2025, Plaintiff's prior counsel informed the Court she emailed all case files.
27 Plaintiff confirmed receipt and the Court relieved Pro Bono Counsel Henson as attorney of record.
28 ECF 70, 71.

3


1 Plaintiff was once again ordered to register on ECF, seek free legal help from the Legal Help Center (with contact info), and provided the pro se materials website. ECF 71, 72. The parties issued a case management statement on March 27, 2025. ECF 73.

### D. Defendants' Motions to Dismiss Under Rules 12(b)(6) and 41(b)

On April 15, 2025, Defendants moved to dismiss part of the FAC under Rule 12(b)(6). ECF 77. Defendants initially sought only to dismiss the following: (1) Count Six under the Bane Act; (2) the erroneously titled "seventh cause of action" under California Code of Civil Procedure Section 526a; (3) Count Seven (conversion); and (4) Count Eight (negligence). ECF 77. Local Rule 7–3 required Plaintiff respond by April 29, 2025. Plaintiff failed to file a response.

On May 14, 2025, the Court again encouraged Plaintiff to seek free legal assistance from the Legal Help Center, providing its location, contact info, and websites for legal help and pro se resources. ECF 77. The Court also reminded Plaintiff the motion to dismiss hearing was in six days. *Id.* The Court made clear: "Over 15 days have passed since the response deadline, April 29, 2025. Plaintiff has failed to file an opposition/response. Absent good cause, failure to file a response and failure to appear on the date of the scheduled hearing date may result in a dismissal for failure to prosecute. *See*, Fed. Rules of Civ. Proc. 41(b)." *Id.* The Court warned Plaintiff that failure to do so may result in dismissal under Federal Rule of Civil Procedure 41(b). *Id.*

On May 16, 2025, after receiving no response from Plaintiff, the Court ordered Plaintiff to: (1) file an opposition or non-opposition statement to the Rule 12(b)(6) motion by May 19, 2025, (2) file a response explaining why the opposition was not timely filed within the same filing, and (3) to be present on May 20, 2025. ECF 81. The Court again warned that "failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion." *Id.* at 1. The Court also warned that "[a]bsent good cause, failure to file a response [to Defendants' Rule 12(b)(6) motion as ordered above] and failure to appear on the date of the scheduled hearing date may result in a dismissal for failure to prosecute." *Id.* (citing Fed. Rules of Civ. Proc. 41(b)). The May 19, 2025 deadline passed. Plaintiff failed to file an opposition, a non-opposition statement, or provide a reason for her failure to respond. ECF 81.

1  On May 20, 2025, Defendants appeared through counsel.  Plaintiff failed to appear as
2 ordered.  ECF 81, 82, 83.  The Defendant's unopposed motion was granted.  ECF 83.  The
3 remaining claims were as follows:  (1) Count One under the Fourteenth Amendment and 42
4 U.S.C. § 1983; (2) Count Two under the Fourteenth Amendment and 42 U.S.C. § 1983; (3) Count
5 Three under the Fourth Amendment under 42 U.S.C. § 1983; and (5) Count Five under the Fifth
6 Amendment under 42 U.S.C. § 1983.

The Court gave the Defendants leave to file a Rule 41(b) motion by June 3, 2025, for the remaining claims.  ECF 83.  The Court indicated on the record and by text order that Rule 41(b) grants the Court "inherent power sua sponte to *dismiss an action* for failure to prosecute…or to comply with a court order."  ECF 82.  On June 3, 2025, Defendants moved to dismiss the action under Rule 41(b).  ECF 85.

### E. Magistrate Judge Peter H. Kang's Pre-Settlement Planning Conference

On May 16, 2025, Judge Kang scheduled a pre-settlement planning conference for June 10, 2025.  ECF 80.  Judge Kang directed the parties to review and comply with the court's Settlement Conference Standing Order prior to the planning conference and ordered the parties to send information to the court for the conference by June 5, 2025.  *Id*   On June 9, 2025, Judge Kang informed Plaintiff by email about the pre-settlement planning call.  ECF 87.  On June 10, 2025, Defendants' counsel attended the call, but Plaintiff did not.  *Id.*  Plaintiff had not responded to any communications concerning the planning call.  *Id.*  The planning call thus was unable to go forward and was not rescheduled. *Id.*

## II. FACTUAL BACKGROUND

### A. The Parties

Plaintiff alleges she lived on boats in Richardson Bay for the past eight years with her two children, ages four and seven.  FAC ¶ 9.  Plaintiff alleges she owned title and registration for the 1979 boat "Loveshack" (hull identification CDR89029107879 and registration CF 7010), which housed her possessions.  *Id.* ¶¶ 2, 9.  Plaintiff purchased the boat on June 14, 2022.  FAC ¶ 9.

Richardson Bay Regional Agency ("RBRA") is a local governmental entity which operates through a "joint powers agreement" among the County of Marin, and the Cities of Belvedere, Mill

Valley, and Tiburon. *Id.* ¶ 10. RBRA and employed Defendants James Malcolm and Steven McGrath. *Id.* ¶ 11.

Plaintiff alleges that Defendant Malcolm, RBRA Harbormaster, signed the contract to seize and destroy the boat. *Id.* ¶ 12. On October 12, 2021, Defendant Malcolm executed a contract with the California Department Boating and Waterways (the "Cal SAVE [Surrendered and Abandoned Vessel Exchange] Grant"), which funds voluntary boat surrenders. *Id.* ¶ 14. Defendant Steven McGrath, RBRA CEO, allegedly supervised Defendant James Malcolm when Malcolm seized the Loveshack. *Id.* ¶¶ 11,14 .

### B. The Alleged Destruction of the Loveshack

Before the destruction of the Loveshack, Plaintiff alleges that she told Defendant Malcolm that she and her children lived on the boat and that the boat was not abandoned. *Id.* ¶ 16. She claims she never expressed intent to voluntarily surrender the boat. *Id.* ¶ 17. Plaintiff further states that despite this, Defendants Malcolm and McGrath (together, the "individual defendants") submitted a SAVE contract to the RBRA for Plaintiff's boat without her consent and without informing her of this decision. *Id.* ¶ 20. The individual defendants then identified and approved, on behalf of the RBRA, that the Loveshack was a "surrendered vessel" under the California Harbor and Navigations Code, described *infra*. *Id.* ¶ 21. Plaintiff alleges the individual defendants completed this process despite failing to gain her approval or to provide her sufficient notice. *Id.* Plaintiff says she never surrendered the Loveshack nor agreed to its seizure. *Id.* ¶ 22.

On or around September 22, 2022, Defendant Malcolm seized the Loveshack, allegedly without notifying Plaintiff or allowing her to respond, and without compensation, a warrant, nor other legal authority to do so. *Id.* ¶¶ 25, 28, 58. Plaintiff claims the Loveshack "disappeared" from storage, leading her to reason it was destroyed on Defendants' behalf. *Id.* ¶ 39.

### III. LEGAL STANDARDS

#### A. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, a plaintiff's "factual allegations [in the complaint] '*must . . . suggest that the claim has at least a plausible chance of success*.'" *Levitt*

6

*v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. But "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Courts need not "accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), or "an unadorned, the-defendant-unlawfully-harmed-me accusation," *id*.

### B.     The California Harbor and Navigation Code

The California Harbor and Navigation Code is a body of California law governing activities and regulations related to navigable waters, harbors, ports, and maritime operations.

#### 1.     Removing Vessels Deemed "Marine Debris"

California Harbor and Navigation Code section 550 defines "marine debris" as "a vessel or part of a vessel, including a derelict, wreck, hulk, or part of any ship or other watercraft or dilapidated vessel, that is unseaworthy and not reasonably fit or capable of being made fit to be used as a means of transportation by water." Section 551(a)(1) says: "notwithstanding any other law, marine debris that is floating…in or on a public waterway…may be removed and destroyed…by any…public agency having jurisdiction over its location or having authority to remove marine debris" if it "meets the definition of marine debris…and has no value" or a value not exceeding the combined removal and disposal costs. Cal. Harb. & Nav. Code § 551(a)(1).

Subsection (b) of section 551 clarifies that "notwithstanding subdivision (a), marine debris that constitutes a public nuisance or a danger to navigation, health, safety, or the environment may be removed and disposed of immediately, unless the marine debris is whole or not demolished during removal, in which case it shall be maintained or stored for 10 days to permit notification of

the owner. If the owner of the marine debris is not identifiable, the marine debris may be immediately destroyed or otherwise disposed of." Cal. Harb. & Nav. Code § 551(b).

If a boat deemed "marine debris" has a visible hull identification number, the agency attempting removal must post a notice, stating the "marine debris shall be removed by the public agency if not claimed or removed within 10 days." *Id.* § 551. The agency must mail by certified or first-class the notice to the marine debris owner's Department of Motor Vehicles address, if known. *Id.* § 551(C). The governmental entity must allow the vessel to remain in place for 10 days after posting or sending notice, whichever is later, before removal. *Id.* § 551(D).

### 2. Removing Other Vessels

California Harbor and Navigation Code section 523 outlines the procedure for government removal of vessels under these additional circumstances: (1) "the vessel is left unattended and is moored, docked, beached, or made fast to land in a position that obstructs the normal movement of traffic or in a condition that creates a hazard to other vessels using the waterway, to public safety, or to the property of another"; (2) the vessel had been previously reported stolen or a complaint has been filed and a warrant issued charging that the vessel has been embezzled; (3) "the person or persons in charge of the vessel are by reason of physical injuries or illness incapacitated to an extent as to be unable to provide for its custody or removal"; (4) an officer arrests a person in control of the vessel and the officer is permitted by law to take and does take the person being arrested; (5) "the vessel interferes with, or otherwise poses a danger to, navigation or to the public health, safety, or welfare"; (6) "the vessel poses a threat to adjacent wetlands, levies, sensitive habitat, any protected wildlife species, or water quality"; or (7) the vessel is "found or operated upon a waterway with a registration expiration date in excess of one year before the date on which it is found or operated on the waterway. Cal. Harb. & Nav. Code § 523. For vessels meeting one of these definitions, the government entity may remove and store the vessel. *Id.* § 523(a).

Finally, governmental entities with jurisdiction may immediately dispose of vessels deemed "surrendered." Cal. Harb. & Nav. Code § 526(a). The California Harbor and Navigation Code defines a "surrendered vessel" as one that the verified titleholder willingly surrendered to a willing public agency if both of the following apply: (1) the public agency determined the vessel

8

was "in danger of being abandoned and therefore ha[d] a likelihood of causing environmental degradation or becoming a hazard to navigation" and (2) the public agency's decision to accept the vessel was based solely on that danger and likelihood. Cal. Harb. & Nav. Code § 526.1.

### C. Rule 41(b)

The Federal Rules of Civil Procedure grant the Court the inherent power sua sponte to dismiss an action for failure to prosecute under Rule 41(b): "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 —operates as an adjudication on the merits."

In *Malone v. United States Postal Serv.*, the Ninth Circuit explained that a district court should consider five factors before dismissing an action under Rule 41(b): (1) the public interest in the expeditious resolution of the litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the availability of less drastic sanctions; and (5) the public policy favoring the disposition of actions on their merits. *See* 833 F.2d 128, 130 (9th Cir. 1987).

The Ninth Circuit also instructs courts that they must afford the litigant prior notice of an intention to dismiss. *Id.* at 133. Although we construe pleadings liberally in their favor, pro se litigants are nonetheless bound by the rules of procedure. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (finding the district court did not abuse its discretion in entering judgment of dismissal where the pro se litigant did not respond to the motion to dismiss); *see also Kyriazis v. Beverly Hills Platinum Realty*, 542 F. App'x 560, 561 (9th Cir. 2013) (holding the district court did not abuse its discretion in dismissing the action because the pro se litigant failed to oppose the defendants' motion to dismiss, despite notice that the failure to do so could be deemed consent).

//

//

//

## IV. DISCUSSION

### A. The Bane Act claim fails under Rule 12(b)(6) for not alleging Defendants used any threat, intimidation, or coercions.

Defendants' Rule 12(b)(6) motion argues the Bane Act claim fails because Plaintiff improperly asserts the alleged wrongful seizure as the basis for the required threatening conduct.

The Bane Act authorizes an action for injunctive and other equitable relief where a person, whether acting under color of law, interferes or attempts to interfere, "by threat, intimidation, or coercion," with the exercise or enjoyment by any individual or individuals of rights secured by state or federal law. Cal. Civ. Code § 52.1. "[T]he statute was intended to address only egregious interferences with constitutional rights, not just any tort. The act of interference with a constitutional right must itself be deliberate or spiteful" and "speech is insufficient to establish the requisite threat unless it includes threats of violence." *Ctr. for Bio-Ethical Reform, Inc. v. Irvine Co., LLC*, 37 Cal. App. 5th 97, 115 (2019) (citations omitted); *Julian v. Mission Community Hospital*, 11 Cal. App. 5th 360, 395 (2017) (noting that speech alone is insufficient unless it threatens violence and reasonably causes fear of harm by someone able to carry it out).

Here, Plaintiff alleges "Doe" threatened to kill her and sink her boat with her children aboard. FAC ¶ 33. Plaintiff alleges no facts suggesting any Defendant threatened, intimidated, or coerced her. *Ctr. for Bio-Ethical Reform, Inc.*, 37 Cal. App. 5th at 115. The Bane Act claim fails.

### B. Absent a dismissal pursuant to Rule 41(b), Plaintiff's remaining claims survive Rule 12(b)(6).

Defendants further move under 12(b)(6) to dismiss Plaintiff's (1) taxpayer action, (2) conversion claim, and (3) negligence claim because they fail to sufficiently state a claim. ECF 77. The Court is not required to address each surviving claim and indicates that ***absent dismissal under Rule 41(b) and subject to argument***, the remaining claims were viable at this stage.

#### 1. Plaintiff sufficiently alleges the taxpayer action.

Defendants argue that Plaintiff fails to state a taxpayer action under California Code of Civil Procedure Section 526a because (1) she does not request relief authorized by the statute; (2) she does not identify any specific illegal expenditure or actionable waste; and (3) the RBRA's

10

removal of the Loveshack was a lawful exercise of statutory police power and therefore cannot constitute waste under the statute. The Court disagrees as outlined below.

### a. Plaintiff sufficiently identifies unlawful use of taxpayer funds.

Code of Civil Procedure section 526a provides in pertinent part:

> An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein.

Section 526a "authorizes actions by a resident taxpayer against officers of a county, town, city, or city and county to obtain an injunction restraining and preventing the illegal expenditure of public funds. The primary purpose of this statute, originally enacted in 1909, is to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement." *Blair v. Pitchess*, 5 Cal. 3d 258, 267–68 (1971). To this end, courts construe the statute liberally. *Id.*

Courts have found it "immaterial that the amount of the illegal expenditures is small or that the illegal procedures actually permit a saving of tax funds" and have held that using paid city employees' time for illegal acts can be enjoined, even if tax revenues were not used. *Id.* at 268.

Plaintiff alleges the relief authorized by the statute because she expressly requests "injunctive relief to prevent defendants from taking and destroying property without following lawful procedures." FAC ¶ 4. "[C]onstruing the pleadings liberally," *Bretz*, 773 F.2d at 1027, Plaintiff's sufficiently alleges that Defendant Malcolm is a RBRA employee (that is, Harbormaster) and in his official capacity, he unlawfully seized her boat — therefore, she alleges taxpayer funds were unlawfully used to employ Defendant Malcolm in her boat's unlawful seizure. FAC ¶ 12; *see Wirin v. Horrall* (1948) 85 Cal. App. 2d 497, 504–505 (1948) (holding the "mere expending [of] the time of the paid police officers of the city of Los Angeles in performing illegal and unauthorized acts" constituted an unlawful use of funds which could be enjoined).

//

### b. Plaintiff adequately alleges abuse of government power.

Defendant next argues Plaintiff's taxpayer action fails because Defendants' actions involve discretionary matters that were authorized as a matter of law by California Harbors & Navigation Code §§ 550-551, which explicitly authorize public entities to remove vessels posing environmental hazards or navigational obstructions. This argument fails because the Court must take Plaintiff's allegations that the acts were *unlawful* because they lacked proper notice as true.[1]

It is true that "[a] cause of action under Code of Civil Procedure section 526a will not lie where the challenged governmental conduct is legal…[or] where the real issue is a disagreement with the manner in which government has chosen to address a problem because a successful claim requires more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion." *Humane Soc'y of the United States v. State Bd. of Equalization*, 152 Cal. App. 4th 349, 358 (2007) (citations and internal quotations omitted).

However, "[s]uch factual disputes are more properly considered at the summary judgment phase or at trial, and not in the context of a motion to dismiss under Rule 12(b)(6), which merely tests the legal sufficiency of the claims asserted in the complaint." *Tech. & Intell. Prop. Strategies Group PC v. Fthenakis*, No. 11-cv-2373, 2011 WL 3501690, at *6 (N.D. Cal. 2011); *see also Mecinas v. Hobbs*, 30 F.4th 890, 904 n.8 (9th Cir. 2022) ("Because the existence of such an effect is unquestionably an issue intertwined with the merits, the district court was not permitted to resolve this question of fact on a motion to dismiss.").

Here, Plaintiff alleges Defendants' seizure of her boat without her consent and without due process violated the Constitution because, *inter alia*, Defendants failed to provide Plaintiff with proper notice prior to the seizure. FAC ¶¶ 20, 42, 48, 92. The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of [Plaintiffs,] the nonmoving party." *Retail Prop. Trust v. United Broth. Of Carpenters and Joiners of America*, 768 F.3d 938, 945 (9th Cir. 2014). Therefore, the Court declines Defendants' invitation to answer

---

[1] The Court notes that Plaintiff's counsel, prior to withdrawal, corrected the record and indicated that Ms. Calaceto bought the vessel on January 2, 2022, and was provided notice on February 7, 2022. The vessel was taken around September 22, 2023. ECF 62, ¶ 12.

these factual questions. *See Moura v. Kaiser Foundation Health Plan, Inc.*, No. 17-cv-2475, 2018 WL 1569812, at *2 (N.D. Cal. Mar. 30, 2018) ("Regardless of Kaiser's contention that these allegations are untrue, at this procedural posture, the Court cannot adjudicate the merits of the factual dispute."). Thus, Plaintiff's sufficiently alleges a taxpayer action to survive Rule 12(b)(6).

### 2. Plaintiff sufficiently alleges a conversion claim against Defendants.

Defendants argue Plaintiff's conversion claim fails because (1) she failed to assert an unequivocal right to possess the specific property allegedly converted; (2) Defendants' authority to take the boat protects them against conversion claims; and (3) the conversion claim duplicates her constitutional claims. The Court quickly resolves points one and three.

First, Plaintiff sufficiently claims a right to possess the boat by alleging proper title and registration. FAC ¶ 15; *Manzarek*, 519 F.3d at 1031 (instructing courts to take allegations as true).

As to Defendants' third point, Defendants provide no authority for a broad rule that a person's state tort claim cannot also be that person's constitutional claim as a matter of law. To the extent Defendants rely on the one case provided, *Grant v. Pitchford*, 565 F. Supp. 430, 433 (S.D. Cal. 1983), the argument fails. In *Grant*, the court held the plaintiff had only alleged state tort claims and "attempted to recast them as constitutional violations." *Id.* That is not the case here — Plaintiff's FAC is the other way around. Defendants provide no support for a proposition that plaintiffs cannot allege alternate routes of relief when their allegations satisfy the pleading requirements for the various claims met. The Court therefore moves on to answering Defendants' second point: does Plaintiffs' conversion claim fail because Defendants are immune from conversion claims based on their statutory authority to seize the boat? The Court answers no.

"The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Sanchez v. City of Fresno*, No. 1:12-CV-00428-LJO-SK, 2013 WL 2100560, at *14 (E.D. Cal. May 14, 2013) (citation omitted). "Conversion is a strict liability tort." *Id.* Conversion can be based on either taking property or intentionally destroying or altering property. *Id.* (citing 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 710, 711, pp.1034–35 (finding that "tossing homeless person's property into trash" may constitute conversion)).

13

Defendant cites to *Sanchez* for the argument that a conversion claim facially fails when an allegedly wrongful act may have been justified by a statutory or other privilege — nowhere does *Sanchez* say this. In fact, *Sanchez* held that the plaintiff there sufficiently alleged conversion against the municipal employee defendants where the plaintiff alleged that those employees were the people who physically carried out the "cleanups" at various homeless encampments in Downtown Fresno (i.e. the intentional taking of their personal property, including property necessary for survival, essential to health, and of personal and emotional value). 2013 WL 2100560, at *14. So too here. Plaintiff alleges that Defendants are the ones who seized her boat, thereby completing the conversion, and that they did so without legal authority and without following procedures required by state law. FAC ¶¶ 12, 13, 25, 26, 64, 74. This is enough.

Defendants' final argument that they are immune from liability for conversion based on Government Codes § 815 and 820.2 is unsupported. Defendants first cite to *Nozzi v. Hous. Auth. of City of Los Angeles*, to save them is unpersuasive where *Nozzi* merely clarified that a public entity is not liable for an injury except as otherwise provided by statute. 806 F.3d 1178, 1200–01 (9th Cir. 2015). Such black letter law is inapplicable here where Plaintiff claims liability attaches under a statute —42 U.S.C. § 1983. Defendants' final citations are unconvincing: (1) *Lipman v. Brisbane Elem. School Dist.*, 55 Cal.2d 224 (1961) was abrogated by *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 771 P.2d 406 (1989); and (2) *Hardy v. Vial*, 48 Cal.2d 577 (1957) and (3) *White v. Towers*, 37 Cal.2d 727 (1951) were superseded by statute in *Leon v. Cnty. of Riverside*, 14 Cal. 5th 910 (2023). Therefore, Plaintiff sufficiently alleges conversion. *See* FAC ¶¶ 12, 13, 25, 26, 64, 74.

### 3. Plaintiff sufficiently alleges negligence.

Defendants allege that they are immune from a negligence claim merely because it is a common law tort claim, and they argue that there is no statutory basis for holding a public entity liable for "negligence." Defendants provide no support for this position.

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), framework "waives the government's sovereign immunity for tort claims arising out of negligent conduct of government employees acting within the scope of employment. This waiver allows the government to be sued under circumstances where the United States, if a private person, would be liable to the claimant in

14

1  accordance with the law of the place where the act or omission occurred.  And, of course, if there

2  is no waiver, the court lacks subject matter jurisdiction, an issue that [the appellate court] reviews

3  de novo." *Perry v. United States (In re Morales),* 895 F.3d 708, 713 (citing *GATX/Airlog Co. v.*

4  *United States,* 286 F.3d 1168, 1173 (9th Cir. 2002) (internal citations and quotations omitted).

As the Ninth Circuit explains:

> One exception to this broad waiver of sovereign immunity, called the discretionary function exception, provides immunity from suit for any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused…The purpose of this exception is to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. The United States bears the burden of proving the applicability of the discretionary function exception.

*Id.* (internal citations and quotations omitted).  The government must therefore prove (1) the act was discretionary in nature, involving judgment or choice and (2) the discretion "is of the kind that the discretionary function exception was designed to shield —namely, only governmental actions and decisions based on considerations of public policy," which is understood to mean considerations "grounded in social, economic, and political policy."  *Id.*  (citations omitted).

Here, Plaintiff alleges Defendants owed her a duty of care not to seize nor destroy her property without lawful authority to do so and that they breached that duty by doing so, which caused her suffering the loss of her property.  FAC ¶¶ 95, 98.  This is enough at the pleading stage where Defendants have provided the Court no authority otherwise.  *See Peterson v. San Francisco Cmty. Coll. Dist*., 36 Cal. 3d 799, 814 (1984) (finding that the defendants being public entities did not preclude the imposition of a duty of care and that "[u]nless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail").  Thus, Plaintiff sufficiently alleges negligence.

**C.  Nevertheless, the Court dismisses the action under Federal Rule of Civil Procedure 41(b).**

Federal Rule of Civil Procedure 41(b) explains: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim

15

against it." Dismissal for lack of prosecution may be done sua sponte and "must be supported by a showing of unreasonable delay." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986) (citation omitted). The Ninth Circuit defers to district courts on unreasonable delay "because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable." *Id. Malone* instructs courts to consider five factors for Rule 41(b) dismissal: (1) public interest in the expeditious resolution of the litigation; (2) the court's need to manage its docket; (3) risk of prejudice to the defendants; (4) availability of less drastic sanctions; and (5) public policy favoring disposition on the merits. 833 F.2d at 130. Following a careful consideration of all five factors, the Courts finds dismissal of the entire action warranted here.

The first and second factors both favor dismissal. Plaintiff failed to comply with three direct orders by this Court to (1) file an opposition to Defendants' Rule 12(b)(6) motion, (2) file a response explaining why such opposition was not timely filed, and (3) be present in court for hearing on the 12(b)(6) motion on May 20, 2025. ECF 81. The Court also ordered Plaintiff on at least two occasions to register for ECF and to seek assistance from the Legal Help Desk. ECF 68, 72. Based on Plaintiff's failure to appear as ordered, it is unclear whether she has done so. Importantly, the Court warned Plaintiff on at least three occasions that failure to oppose a motion may result in dismissal. ECF 3, 77, 81. Such non-compliance inherently delays resolution of the case and is to the detriment of the public. *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) ("It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants[.]"); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (noncompliance with court orders diverts "valuable time that [the court] could have devoted to other major and serious criminal and civil cases on its docket").

The public interest in expeditious resolution also weighs in favor or dismissal where Plaintiff failed to oppose Defendants' Rule 12(b)(6) and 41(b) motions and the case began nearly two years ago on August 30, 2023, ECF 1. *See Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (recognizing court's need to control its own docket).

The third factor, risk of prejudice to the defendant is analyzed as "related to the plaintiff's reason for defaulting…" *Id.* A "paltry excuse" for violating a court order can also indicate

16

1  "sufficient prejudice" to weigh in favor of dismissal. *Id.*; *Malone*, 833 F.2d at 131 (placing
2  "particular reliance on the district court's determination that the plaintiff's excuse for her conduct
3  was groundless" in holding the prejudice to the government was sufficient to justify dismissal).
4  This factor may favor dismissal even without demonstrated prejudice when the party repeatedly
5  disobeys court orders. *See Pagtalunan*, 291 F.3d at 643 (holding this factor favored dismissal
6  despite no shown prejudice because "[u]nnecessary delay inherently increases the risk that
7  witnesses' memories will fade and evidence will become stale") (citation omitted); *see also*
8  *Henderson*, 779 F.2d at 1425 (noting the court could not find a lack of prejudice "[w]here counsel
9  continues to disregard deadlines, warnings, and schedules set by the district court").

10  Here, the Court provided Plaintiff ample opportunity to explain her failure to oppose
11  Defendants' Rule 12(b)(6) motion and ordered her to do so. ECF 81 (ordering Plaintiff to file an
12  opposition or non-opposition statement). Plaintiff failed to do so. And despite the Court
13  "warn[ing] explicitly of the consequences of [Plaintiff's] dilatory behavior," Plaintiff "continue[d]
14  to disregard deadlines, warning, and scheduled set by the district court[.]" *Id*. The complaint in
15  this case was filed on August 30, 2023. Several efforts and methods of mediation were explored
16  in an effort to resolve the matter, counsel was appointed to assist the Plaintiff, and the schedule
17  was relaxed at the request of Plaintiff to allow for responses to various motions. Plaintiff does not
18  reside on the boat and prior to its destruction, it housed her belongings. The Defendants
19  responded to all court appearances. As the matter was fast approaching it's 2-year anniversary,
20  the case was still in the pleading stages. The Defendant acknowledges the minimal prejudice in
21  their Rule 41(b) motion. However, Plaintiff unreasonably delayed the case despite multiple Court
22  warnings, *see* ECF 77, 79, 81, so this factor supports dismissal.

23  The fourth factor, the availability of less drastic sanctions, favors dismissal. The Court
24  already considered less drastic alternatives. The Court's May 14, 2025, Order warned Plaintiff
25  that "[a]bsent good cause, failure to file a response [to Defendants' Rule 12(b)(6) motion] and
26  failure to appear on the date of the scheduled hearing date may result in a dismissal for failure to
27  prosecute." ECF 79 (citation omitted)). The Court's further May 16, 2025, Order warned of the
28  same, stating that "failure of the opposing party to file a memorandum of points and authorities in

1  opposition to any motion shall constitute consent to the granting of the motion" and that "[a]bsent
2  good cause, failure to file a response" to Defendant's 12(b)(6) motion and failure to appear at the
3  hearing "may result in a dismissal for failure to prosecute." ECF 81. "[A] district court's warning
4  to a party that failure to obey the court's order will result in dismissal can satisfy the
5  'consideration of [less drastic sanctions]' requirement." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262
6  (9th Cir. 1992), *as amended* (May 22, 1992). Accordingly, this factor also favors dismissal.

7  The fifth factor "favors disposition of the case on the merits," which weighs against
8  dismissal. *Pagtalunan*, 291 F.3d at 643.

9  The Court concludes that four out of five factors weigh in favor of dismissal under Rule
10 41(b) and therefore **dismisses the action in its entirety**. *See id.* (finding no abuse of discretion
11 where three factors favored, and two factors weighed against dismissal).

## V.  CONCLUSION

The Court **GRANTS** Defendants' Rule 12(b)(6) motion to dismiss, ECF 77, counts six through eight of the FAC, ECF 39, and **GRANTS** Defendants' Rule 41(b) motion to dismiss the entire action **with prejudice** based on Plaintiff's failure to prosecute, ECF 85.

The Clerk shall close the file and terminate all pending matters and deadlines.

This Order resolves ECF 77 and 85.

**IT IS SO ORDERED.**

Dated: June 16, 2025

TRINA L. THOMPSON
United States District Judge